Filed 12/12/22 (see dissenting opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | B319752 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP03582C) |
| Plaintiff and Respondent, | |
| v. | |
| W.E., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ashley Price, Juvenile Court Referee. Conditionally reversed and remanded with directions.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

Children's Law Center 5 and Kristin Hallak Minor.

————————————

Mother appeals from an order terminating her parental rights to daughter under Welfare and Institutions Code section 366.26. Mother contends the juvenile court erred when it determined the Los Angeles County Department of Children and Family Services (DCFS) satisfied its inquiry obligations under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) and related California law as to daughter's possible Indian heritage. No interested party filed a respondent's brief; instead, mother, DCFS, and daughter filed a joint application and stipulation for conditional affirmance and remand to the juvenile court to order DCFS to inquire of a non-relative extended family member (NREFM) caring for the child, and available maternal and paternal extended family members in compliance with ICWA and related California law. We accept the parties' stipulation, but our disposition is a conditional reversal.

This case involves reversible error because the parties agree, and we concur, there was noncompliance with the inquiry requirements of ICWA and related California provisions. (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.) Here, DCFS only inquired of the parents regarding Native American ancestry. DCFS did not ask the NREFM I.C. (daughter's caregiver and prospective adoptive parent), or the extended known maternal and paternal family members about Indian heritage. Pursuant to Welfare and Institutions Code section 224.2, subdivision (b), DCFS had a duty to ask daughter's "extended family members" and "others who have an interest in the child" whether daughter is an Indian child.

After reviewing the entire record, we find that the statutory requirements set forth at Code of Civil Procedure

2

section 128, subdivision (a)(8) for a stipulated reversal have been satisfied here. (*In re Rashad H.* (2000) 78 Cal.App.4th 376, 379–382.)

### ***DISPOSITION***

The juvenile court's April 7, 2022 order terminating parental rights to daughter is conditionally reversed, and the matter is remanded to the juvenile court for proceedings consistent with this opinion. The juvenile court shall order DCFS to make reasonable efforts to interview the NREFM (I.C.) and available maternal and paternal family members about the daughter's Indian ancestry and to report to the court the results of DCFS's investigation. Based on the information reported, if the court determines that no additional inquiry or notice to tribes is necessary, the order terminating parental rights is to be reinstated. If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and related California law. The remittitur shall issue forthwith.

RUBIN, P. J.

I CONCUR:

MOOR, J.

3

In re A.C.
B319752


BAKER, J., Dissenting


Today's opinion of the court moves the Courts of Appeal further down the wrong path of adjudicating appeals that raise issues under the Indian Child Welfare Act (ICWA) and related California law.  The upshot of the majority's holding is that—on pain of appellate reversal—juvenile courts and social services agencies must now make ICWA inquiry of not just all of a minor's extended family members but also untold others who are not even related to the minor.  Fortunately, our Supreme Court has agreed to hear a case that will hopefully bring some much-needed predictability and stability to this area of the law.  (*In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578 (*Dezi C.*).)  While we await guidance from the Supreme Court, I write separately to highlight the facts of this case as an example of just how awry things have gone (and could yet further go), and to add some observations about how courts can make sense of an unartfully drafted statute.

I

The pertinent facts can be summarized quickly.  The minor in question, 3-year-old A.C., has two half-siblings, 15-

year-old J.C. and 12-year-old A.G.[1]  Each child has a different father; I.C. is J.C.'s father.

Dependency proceedings were initiated by the Los Angeles County Department of Children and Family Services (the Department) for all three children.  (This appeal concerns only A.C.)  A.C.'s mother and presumed father were asked if they had any Indian ancestry and both said they did not.  There was no evidence before the juvenile court that A.C. lived on a tribal reservation, had been a ward of a tribal court, or that either of her parents had an identification card indicating membership or citizenship in an Indian tribe.

The juvenile court removed A.C. from her parents' custody and ordered her placed with I.C., her half-sister's father who is not biologically related to A.C. and is not married to or in a relationship with A.C.'s mother.  I.C. is referred to in the appellate record as A.C.'s non-related extended family member.[2]

## II

## A

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child

---

[1]    These were the children's ages at the commencement of dependency proceedings.

[2]    I.C. also denied having any Indian ancestry.

welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.] ICWA declared that 'it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' (25 U.S.C. § 1902.)" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8.)

ICWA defines an "Indian child" as any unmarried person under the age of 18 who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe *and* is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4), emphasis added; see also 25 C.F.R. § 23.108 ["The Indian Tribe of which it is believed the child is a member (or eligible for membership and of which the biological parent is a member) determines whether the child is a member of the Tribe, or whether the child is eligible for membership in the Tribe and a biological parent of the child is a member of the Tribe, except as otherwise provided by Federal or Tribal law"].) ICWA also defines who counts as an "extended family member": a person over the age of 18 who is an "Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece

or nephew, first or second cousin, or stepparent."[3]  (25 U.S.C. § 1903(2).)

ICWA gives Indian tribes a right to intervene in any state court proceeding contemplating foster care placement of, or termination of parental rights to, an Indian child; the statute also imposes substantive requirements with respect to such placement and termination decisions.  (25 U.S.C. §§ 1911(c), 1912, 1915.)  To effectuate that right to intervene, ICWA requires that for any state court involuntary proceeding "where the court knows or has reason to know that an Indian child is involved," "the party seeking the foster care placement of, or termination of parental rights to, an Indian child" must notify the child's parents or Indian custodian and the Indian child's tribe of the pending state court proceeding and the right to intervene.  (25 U.S.C. § 1912(a).)

In 2015 and 2016, the Bureau of Indian Affairs (BIA) undertook a notice and comment process to update regulations promulgated to implement the ICWA statutory scheme.  (80 Fed. Reg. 14880 (Mar. 20, 2015) [proposed rule]; 81 Fed. Reg. 38778 (June 14, 2016) [final rule].)  Among the principal purposes of the rulemaking was a desire to establish procedures for determining whether ICWA applies in state court child custody proceedings.  (80 Fed. Reg. 14881.)

---

[3]  The statute cautions this list only controls in the absence of a definition by the "law or custom of the Indian child's tribe."

The BIA's proposed rule contemplated adding a new section 23.107 to the Code of Federal Regulations that would identify actions child services agencies and state courts must undertake to determine whether a child is an Indian child. (80 Fed. Reg. 14887.) State courts, under the rule as proposed, would be required to "ask, as a threshold question at the start of any State court child custody proceeding, whether there is reason to believe the child . . . is an Indian child by asking each party to the case, including the guardian ad litem and the agency representative, to certify on the record whether they have discovered or know of any information that suggests or indicates the child is an Indian child." (80 Fed. Reg. 14887.) The proposed rule stated there would be "reason to believe" a child was an Indian child if any of five criteria were present (for example, a party to the proceeding or Indian tribe or organization informed the court that the child was an Indian child). (80 Fed. Reg. 14887-14888.) The proposed rule further provided that notice of state court proceedings must be provided to each tribe where the child may be a member or eligible for membership (and to the child's parents or custodian) when a court or child services agency "knows or has reason to believe" that the child in question is an Indian child. (80 Fed. Reg. 14888.)

The final rule the BIA prepared after receiving comments— which is intended to establish "minimum Federal standards" (81 Fed. Reg. 38779)—differed significantly from the proposed rule, including with respect to the rule's requirements for what courts must do to

5

investigate whether a minor involved in court proceedings is an Indian child.

The final rule retained the proposed rule's requirement that a court ask the participants in a proceeding, at the commencement of the proceeding, whether the child is an Indian child. (81 Fed. Reg. 38803-38805, 38869-38870; see also 25 C.F.R. § 23.107(a) ["State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record"].) But the final rule abandoned, in response to various concerns expressed by commenters, the proposed rule's "reason to believe" formulation of the standard that should govern Indian child determinations. (81 Fed. Reg. 38803-38804.) Specifically, commenters expressed concern that "requiring notices to Tribes is expensive, time consuming, and causes undue delay, especially when a parent has only a vague notion of a distant Tribal ancestor," and commenters "noted the discrepancy between the phrases 'reason to believe' and the statutory phrase 'reason to know'"—emphasizing that the reason to believe standard was overly broad. (81 Fed. Reg. 38804.) The BIA, in response, opted to use only the "reason to know" standard found in ICWA itself, explaining the change was made to be consistent with the statutory text and to promote clarity. (81 Fed. Reg. 38803.)

6

The BIA, in its final rule, also responded to commenters who urged that its regulations "should be clear about whom, at a minimum, agencies should ask about the child's ancestry" and "what should be asked." (81 Fed. Reg. 38804.) The BIA rejected that approach. The agency explained the final rule it promulgated directly addressed only what courts, not social services agencies, must do. (81 Fed. Reg. 38805.)

## B

After the BIA's promulgation of the final rule in 2016, our Legislature set about revising California's ICWA-related statutes.

The Legislature adopted, almost verbatim, the provision in the new BIA regulations that requires dependency court judges to ask at the initial child custody hearing whether the child involved may be an Indian child. (Compare 25 C.F.R. § 23.107(a) ["State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record"]) with Welf. & Inst. Code, § 224.2, subd. (c) ["At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to

7

know that the child is an Indian child"].[4])  That obligation is (for the most part) straightforward.[5]

But in two major ways, the Legislature diverged—confusingly—from the BIA's approach to regulating the additional efforts a court must undertake to determine whether an Indian child may be involved in a juvenile court proceeding.

First, unlike the BIA, the Legislature chose not to abandon a "reason to believe" standard in favor of the "reason to know" standard in ICWA itself.  But that is not to say the Legislature chose only the "reason to believe" standard that some commenters on the BIA's rule described as "broader."  Instead, the Legislature retained *both* standards and required courts and social services agencies to assess whether there is reason to *believe* a child is an Indian child and then, at least in some cases, to later assess whether there is reason to *know* the same child is an Indian child.  (§ 224.2, subds. (d) [reason to know], (e) [reason to believe].)  Employing both partially overlapping standards can be confusing, particularly because Section 224.2 requires courts to use many of the same legal criteria when making both a reason to believe and a reason to know determination.  (§ 224.2, subd. (e)(1) ["There is reason to believe a child

_____

[4]    References to Section 224.2 that follow are to Welfare and Institutions Code section 224.2.

[5]    There may be occasion in a given case to interpret who counts as a "participant."

8

involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)"].[6]

Second, the Legislature drafted subdivisions of Section 224.2 commanding investigation of Indian child status beyond the aforementioned first court appearance inquiry (§

_____

[6]  A court making a reason to believe determination may accordingly need to grapple with the quasi-metaphysical question of when information "indicates" but does "not establish[ ] the existence" of the specified legal grounds in paragraphs one through six of subdivision (d).

Briefly summarized, these grounds are (1) "a person having an interest in the child" informs the court that the child is an Indian child; (2) the child's residence is on a reservation or in an Alaska Native village; (3) any participant in the court proceeding, or an Indian tribe or agency, informs the court that information has been discovered "indicating" the child is an Indian child; (4) the child him or herself "gives the court reason to know" that the child is an Indian child (an aside: yes, there is a reference to "reason to know" in a list of circumstances that are supposed to define when "reason to know" exists); (5) the court is informed the child has been a ward of a tribal court; and (6) the court is informed that the child or his or her parents has an identification card indicating membership or citizenship in an Indian tribe.

9

224.2, subd. (c)) in a manner that appears to require limitless inquiry into whether a child might be an Indian child.  (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1007 (*Ezequiel G.*); *Dezi C.*, *supra*, 79 Cal.App.5th at 785 [Section 224.2 creates "an open-ended universe of stones" to be turned or left unturned].)  Section 224.2, subdivision (b), for instance, states a county welfare department has a "duty to inquire" whether a child placed in its temporary custody is an Indian child and this inquiry "*includes, but is not limited to*, asking the child, parents, legal guardian, Indian custodian, extended family members, *others who have an interest in the child*, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (Emphasis mine.)  Section 224.2, subdivision (e)(1) states there is reason to believe a child is an Indian child when the court, social worker, or probation officer "has information suggesting" the "parent of the child or the child" is a member of a tribe or eligible to be a member; such information "*includes, but is not limited to*" (emphasis mine) the six subdivision (d) "reason to know" criteria I set forth in the margin earlier.  And Section 224.2, subdivision (e)(2) states there must be "further inquiry" when reason to believe exists (i.e., to determine if there is "reason to know"), and this further inquiry "*includes, but is not limited to*" (mine again) myriad investigative activities: interviewing parents and extended family members; contacting the BIA, the Department of Social Services, "and any other person

10

that may reasonably be expected to have information" regarding the tribes to which the child might be a member or eligible for membership; and contacting the tribe(s) themselves "and any other person that may reasonably be expected to have information" about whether the child is a member or eligible for membership.[7]

Section 224.2 also addresses how courts of review should assess at least one aspect of the juvenile courts' compliance with the inquiry obligations it imposes.[8]

---

[7] "Contact" is defined to "include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).) Published authority has not, to my knowledge, considered whether or how this definition requires anything meaningfully different than what must be provided to the tribes when formal notice (Welf. & Inst. Code, § 224.3, subd. (a)(5)) is required.

[8] Section 224.2, subdivision (g) states that where there is reason to know a child is an Indian child but a court still does not have sufficient evidence to determine the child is an Indian child, the "court shall confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the [pertinent] tribes" to determine whether the child or his or her parents are tribal members or eligible for membership. Under Section 224.2, subdivision (i)(1), if there is reason to know a child is an Indian child, the court must treat the child as an Indian child "unless and until" the court determines otherwise after a review of a subdivision (g) due diligence report, formal notices sent to tribes, and any tribal response to those notices.

11

Subdivision (i)(2) states review should be for sufficiency of the evidence: "If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.) does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."[9]

### III

Unsurprisingly, these recent amendments to the Welfare and Institutions Code have generated confusion and divergent views in the appellate courts. Even the courts that reach different results are nearly unanimous on one point, though: review of a juvenile court's ICWA finding should be for sufficiency of the evidence, which calls for application of the substantial evidence standard of review. (See, e.g., *In re S.H.* (2022) 82 Cal.App.5th 166, 175; *Dezi C.*, *supra*, 79 Cal.App.5th at 777; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re J.S.* (2021) 62 Cal.App.5th 678, 688 ["We review a court's ICWA findings for substantial evidence. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted,

---

[9]     As I explain *post*, I believe the sufficiency of the evidence review that is the only type of review explicitly contemplated by the statute can aid in making sense of the substantive inquiry-related provisions of the statute.

12

supports them, and we resolve all conflicts in favor of affirmance"], internal quotation marks omitted; but see *Ezequiel G.*, *supra*, 81 Cal.App.5th at 1004, 1008 [applying a hybrid substantial evidence and abuse of discretion standard of review].)  Where courts have diverged is in answering this question: can it really be that the Legislature intended appellate courts to invariably reverse juvenile court orders (which often delays finalizing an adoption) if the court or a social services agency has not interrogated every extended family member that can be contacted about whether a child in dependency proceedings may be an Indian child?

A few appellate opinions, including one in this division, answer "yes," that is what appellate courts must do.  (See, e.g., *In re H.V.* (2022) 75 Cal.App.5th 433, 438 (*H.V.*); *In re Y.W.* (2021) 70 Cal.App.5th 542, 556; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 [reversal required even if there are "'slim' odds the information in the possession of the extended maternal relatives would show [the child] is qualified for membership in an Indian tribe"] (*Antonio R.*).)  *Dezi C.* and *Ezequiel G.* identify the considerable problems with this approach.  (*Dezi C.*, *supra*, 79 Cal.App.5th at 782-785 [cataloging problems, including an incentive for parents in dependency proceedings to "game the system" and the creation of "a seemingly endless feedback loop of remand, appeal, and remand" because "section 224.2 creates an open-ended universe of stones" and "the automatic reversal rule mandates remand if any stone is left unturned"]; *Ezequiel G.*, *supra*, 81 Cal.App.5th at 1007-1008 ["The difficulty of

13

describing precisely what the statute requires in a particular case is highlighted by the ambiguity of the remand instructions in cases that independently review alleged ICWA error.  Although the reversals in these cases are based on an agency's failure to make an ICWA inquiry of particular named individuals, the remand instructions typically are not limited to these individuals, but instead send cases back to juvenile courts with instructions to ensure ICWA compliance, without specifying exactly what that entails"].[10]) I have highlighted problems too.  (*H.V.*, *supra*, at 441 (dis. opn. of Baker, J.) ["This unpredictability in the law is a real problem.  It is beyond dispute that ordering a child services agency to try to run down suggestions of possible Indian heritage has real costs to the agency's core mission of keeping children healthy and safe—there are only so many hours in a day and only so many child services agency employees on the payroll"].)

---

[10]    A good example of the ambiguity *Ezequiel G.* highlights is found in *Antonio R.*, *supra*, 76 Cal.App.5th 421.  In analyzing a claim that ICWA-related inquiry was insufficient, the *Antonio R.* court found error because "[a]ll the Department needed to do was to inquire of the maternal relatives—identified by Mother and later present in the courtroom—whether Antonio is or may be an Indian child." (*Id.* at 436.)  But the opinion's dispositional language is much broader and, indeed, indeterminate—ordering the juvenile court and the social services agency "to comply with the inquiry and notice provisions of ICWA and California law consistent with this opinion, *including* inquiring of the maternal extended family members." (*Id.* at 436-437, emphasis added.)

14

The majority of courts, on the other hand, recognize the answer to the question of whether the Legislature intended automatic reversal for failure to interview every available extended family member must be "no." Nearly all of these courts approach the issue from the perspective of prejudicial error, but not all in precisely the same manner. *Dezi C.* helpfully catalogs the differences, including the harmless error approach (unfortunately dubbed the "reason to believe" rule) that *Dezi C.* itself proposes. (*Dezi C., supra*, 79 Cal.App.5th at 777-779.)

The difficulty with all of the opinions relying on harmless error doctrine to cabin limitless statutory provisions is the same: reviewing courts typically do not undertake a counterfactual harmless error analysis when the issue is the sufficiency of the evidence to support a determination made in the court below. (See, e.g., *In re Catherine S.* (1991) 230 Cal.App.3d 1253, 1258 ["The concept of harmless error plays no role in an analysis of the sufficiency of evidence to support a ruling. If the ruling was unsupported by substantial evidence, it is necessarily reversible"]; see also *People v. Garcia* (2016) 62 Cal.4th 1116, 1133 [reversing burglary conviction unsupported by substantial evidence in the record—without requiring any showing of prejudice].) There is good practical reason for that: it is hard for a reviewing court to abstractly determine what other evidence could have been presented in a lower court but was not, and what the effect of that evidence would have been. (See *Dezi C., supra*, 79 Cal.App.5th at 778 ["This

15

diversity of rules is understandable. That is because courts are grappling with how to assess how the *absence* of information (that is, answers to the questions about American Indian heritage that the agency never asked) might affect the juvenile court's ICWA finding"].)

The majority in *Ezequiel G.*, *supra*, 81 Cal.App.5th 984 takes a different approach to the problem of how to make sense of Section 224.2. Importantly, the majority understands "complying with the literal language of [Section 224.2]—that is, making an *initial* and *further* ICWA inquiry of every member of a child's extended family, including first and second cousins, plus every other person who has an interest in the child—is absurd at best and impossible at worst." (*Id.* at 1006.) The *Ezequiel G.* court solves this problem not by relying on principles of harmless error, but by holding an abuse of discretion standard of review should govern assessment of a juvenile court's management of ICWA-related inquiry. (*Id.* at 1004-1005 ["Deciding whether an inquiry was 'adequate' and an agency acted with appropriate diligence requires more of a court than simply applying a statutory checklist to undisputed facts. Instead, it requires the court to 'engage in a delicate balancing' [citation], to assess whether an ICWA inquiry was appropriate and sufficient in light of the facts of a particular case. In short, the statute directs the juvenile court to perform a quintessentially discretionary function, and thus we believe our review should be for abuse of discretion"].)

16

This approach has much to recommend it, including the advantage of avoiding an awkward application of harmless error principles. Indeed, I hold a similar but not identical view of how the ICWA-related inquiry process should work, having now confronted a multiplicity of appeals raising these issues. As I next explain in the context of the facts of this case, I believe only a substantial evidence inquiry is necessary if we endeavor to understand what the Legislature likely intended when amending Section 224.2—however imperfectly that intent was realized.

IV

The majority returns this case to the juvenile court with directions to interrogate non-related extended family member I.C., and "available maternal and paternal family members," about whether A.C. may be an Indian child. This result only exacerbates the problems we have already seen in our ICWA jurisprudence.

There are already many published Court of Appeal opinions—particularly when taken to their logical conclusion regardless of any analytically arbitrary limits in their dispositional language—that require social workers to ask ICWA-related questions of every family member of a child they can find: parents, grandparents, brothers, sisters, first cousins, second cousins, aunts, uncles, etcetera. That can be a challenge in its own right. But the upshot of today's opinion is that this universe has gotten even bigger: juvenile courts and social services agencies must now also contact

17

and interview non-related extended family members presumably because they qualify as "others who have an interest in the child."  But what does *that* mean?  How is a court or social services agency to decide who else has an interest in a child such that ICWA-related questions must be posed?  Do family friends qualify?  Therapists?  Pastors?  Teachers?  Coaches?  Doctors?  Dentists?  The ambiguity is remarkable.

Strictly speaking, the jurisprudential impact of reversing based on invocation of this vague category of "others who have an interest in the child" might be viewed as limited insofar as the "including but not limited to" language in the pertinent statutory provisions makes the lists indeterminate (more on that in a moment).  But practically speaking, I submit the impact of the result the court reaches today is quite dramatic: one Court of Appeal has now said that juvenile courts and social services agencies must make a judgment about all those who have an interest in a child and ask ICWA-related questions of all of those people plus all extended family members.  I do not envy the juvenile courts and social workers who must try to carry out such a task.

I would resolve this appeal differently.  I would reject the joint stipulation to remand the cause with directions to make ICWA-related inquiry of a non-related extended family member (and others).  Instead, I would interpret the inquiry categories in section 224.2 as recommended sources of ICWA-related information, not theoretically never-ending to-

do lists, and conclude substantial evidence supports the juvenile court's determination that A.C. is not an Indian child. I shall elaborate.

As I have previously said, and as *Ezequiel G.* recognizes, the "including but not limited to" language that repeatedly appears in Section 224.2 requires the absurd or impossible *if* the statute is read to require inquiry of each category of people the statute mentions. (*Ezequiel G.*, *supra*, 81 Cal.App.5th at 1006; *H.V.*, *supra*, 75 Cal.App.5th at 440-441 (dis. opn. of Baker, J.).) But the statutory provisions at issue do not have to be read that way, and established precedent tells us we should interpret statutes to avoid absurd consequences (*In re J.W.* (2002) 29 Cal.4th 200, 210).

Put in more specific terms, Section 224.2, subdivision (b) says "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." If that is read as a direction that exhaustive inquiry must be made of each of these categories and unspecified others (because the list is without limitation), the statute is practically if not theoretically impossible to satisfy. But if these are instead *examples* of the categories of people a social services agency or court should inquire of, the "includes, but is not limited to" language makes good sense. That is just the sort of language one uses when recommending a course of action

19

while permitting the person who will be undertaking the action to consider other options in light of what is appropriate in any given case.[11]  Read in that manner, the various provisions of Section 224.2 direct courts to manage an appropriate inquiry and consider all of the enumerated potential sources of ICWA-related information as necessary to arrive at a reasonable conclusion of whether a child is, or may be, an Indian child.  (See *Ezequiel G.*, *supra*, 81 Cal.App.5th at 1004-1005 ["Deciding whether an inquiry was 'adequate' and an agency acted with appropriate diligence requires more of a court than simply applying a statutory checklist to undisputed facts"].)

---

[11]     The same is true in other places where the statute uses the "including but not limited to" formulation.  When assessing whether there is "reason to believe" a child may be an Indian child, for instance, a juvenile court should look to the six Section 224.2, subdivision (d) factors as potential indicia of eligibility for tribal membership and should ensure it has sufficient information from these sources or others to reasonably make a determination.

By contrast, other provisions of the statute that do not use the "including but not limited to" formulation are not amenable to the same interpretation.  The aforementioned subdivision (c), for instance, states a court must ask each participant present at the first court appearance whether the person knows or has reason to know the child is an Indian child.  That is a straightforward requirement that presents no difficulty in applying.  So too, for example, with subdivision (f), which requires formal notice to tribes and governmental entities where there is reason to know a child is an Indian child.

The statute's sole expressed focus on review for sufficiency of the evidence reinforces the point. If the statute requires inquiry of every extended family member, every other person with an interest in a child, and unspecified others as well, there is no real need for review for sufficiency of the evidence—only perfect compliance will suffice.[12] If, instead, the sources that are specified in the statute without limitation are understood as recommended sources of ICWA-related information, a review for substantial evidence fits nicely: a reviewing court will decide whether the juvenile court amassed sufficient information to reasonably conclude the particular child implicated in a juvenile court proceeding is not an Indian child.[13]

---

[12] Consider a hypothetical example based loosely on facts of a case recently before this court. A child placed in foster care in dependency proceedings has 36 cousins. The child welfare agency interviews 30 of those cousins, learns of no information indicating the child may be an Indian child, and opts not to contact the remaining six. The juvenile court finds ICWA does not apply. I submit that, on appeal, the view of most courts would be that this has to be sufficient and there is no reason to remand for inquiry of the remaining six. But for those courts that have held Section 224.2 requires inquiry of all available people in the categories it specifies, the question is this: what *statutory* basis is there to say such a remand is not required?

[13] An additional benefit of this statutory interpretation and review for sufficiency of the evidence approach is it allows a dialogue of sorts between the courts and the Legislature that a harmless error approach grounded in constitutional principles

On that understanding of Section 224.2, I believe substantial evidence supports the ICWA-related finding the juvenile court made here. Both parents denied Indian ancestry and there were no other indicia (e.g., tribal reservation residence) that A.C. is an Indian child. (*Ezequiel G.*, *supra*, 81 Cal.App.5th at 1010 ["Because tribal membership typically requires an affirmative act by the enrollee or her parent, a child's parents will, in many cases, be a reliable source for determining whether the child or parent may be a tribal member"]; see also 25 U.S.C. § 1903(4) [an Indian child "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe"].)

V

An obvious counterpoint to my proposed resolution of this appeal requires brief discussion. If I am correct, the argument goes, why then does the Department concede a

---

may well foreclose. If the Legislature believes I have too permissively understood the inquiry directions it sought to give juvenile courts and social services agencies, the Legislature can further amend the statute to make its intent clearer. (For instance, the Legislature might specify: "Obtaining a denial of tribal membership or eligibility for tribal membership from a child's parents shall not be sufficient alone to discharge a county welfare or probation department's obligation to inquire into whether a child is, or may be, an Indian child.")

remand here is appropriate?  My response: small wonder the Department concedes error.  The adversarial process in these cases has broken down to a degree as a result of two factors.

First, the Department's position is easily understood as a decision to treat any delays in finalizing an adoption as its chief concern.  If the choice in a particular case is between accepting a relatively quick remand for further ICWA-related investigation (even if the Department believes such investigation is almost certainly not going to be fruitful) or waiting the months necessary for completion of full briefing and argument of an appeal, the Department appears to be choosing in some cases what it views as the lesser of two evils.[14]

Second, the Department may be interpreting comments from some courts as encouragement to abandon its normal adversarial posture.  There are breezy, appellate observations in published opinions that minimize the aggregate burden of inquiry efforts—even though that view is not shared by at least one of those closest to the action.  (Compare *In re Oscar H.* (2022) 84 Cal.App.5th 933, 935 ["The [Department] could have satisfied its inquiry obligations by asking for contact information and making a

_____

[14]    The problem, of course, is that legally unnecessary additional inquiry efforts to be undertaken on remand take time that could be spent elsewhere.  Even if that can be done more quickly for one child than resolving that child's dependency appeal, in the aggregate the time adds up.

23

few phone calls"]; *Antonio R.*, *supra*, 76 Cal.App.5th at 436 ["All the Department needed to do was . . ."] with *In re A.C.* (2022) 75 Cal.App.5th 1009, 1019 (conc. & dis. opn. of Crandall, J.) ["As someone who handled a busy dependency calendar for the three and a half years immediately preceding this assignment, it is hard to understate the havoc, expense, and uncertainty caused by the[ ] conflicting mandates" of ICWA and other law requiring prompt resolution of juvenile matters and stable homes for dependent children].) In addition, another opinion more directly counsels the Department to acquiesce in just the sort of stipulated remand we have here; while the posture of that case was different, the Department may be understanding the direction more broadly. (*In re M.B.* (2022) 80 Cal.App.5th 617, 629 ["Rather than attempt to moot [the parent's] appeal by belatedly conducting the investigation required by section 224.2, the Department's proper course of action was to stipulate to a conditional reversal with directions for full compliance with the inquiry and notice provisions of ICWA and related California law—a procedure the Department has used in many ICWA appeals pending before us"].)

I accordingly do not believe the Department's acquiescence in a remand carries its customary force in demonstrating the existence of reversible error.

## VI

In closing, it is again worth emphasizing that compliance with ICWA, which enables tribal participation, is important. The point is not that the Department should be relieved of a sensible, robust duty to inquire that is necessary to determine whether the protections of ICWA apply in a given case. Rather, the point, as I have said before (*H.V.*, *supra*, 75 Cal.App.5th at 439 (dis. opn. of Baker, J.)), is that it is possible to have too much of a good thing, and we should not be in the business of appellate nitpicking that is not compelled by statute.

Reviewing courts should ensure, via conditional reversal (or affirmance), that juvenile courts are attentive to the straightforward obligation in both federal and state law that requires ICWA-related inquiry of all participants at the first dependency court appearance. Social services agencies should take seriously the potential sources of tribal membership information specified in Section 224.2 and inquire of parents and other family members likely to have relevant information. But the juvenile courts must manage that process in the first instance and our review should be appropriately deferential, looking at the sufficiency of the evidence for a juvenile court's determination that an adequate inquiry has been made to determine whether a child is an Indian child.


BAKER, J.


25